COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

July 13, 2015

Katharine L. Mayer, Esquire
McCarter & English LLP
405 North King Street, 8th Floor
Wilmington, DE  19801

Robert J. Valihura, Jr., Esquire
The Law Office of Robert J. Valihura, Jr.
1203 North Orange Street
Wilmington, DE  19801

Chad J. Toms, Esquire
Whiteford Taylor & Preston LLC
405 North King Street, Suite 500
Wilmington, DE  19801

Brian L. Kasprzak, Esquire
Marks, O'Neill, O'Brien,
 Doherty & Kelly, P.C.
300 Delaware Avenue, Suite 900
Wilmington, DE  19801

Re:  *REDUS Peninsula Millsboro, LLC v. Mayer*
      C.A. No. 8835-VCN
     *Williams v. REDUS Peninsula Millsboro, LLC*
      C.A. No. 10228-VCN
     Date Submitted:  March 30, 2015

Dear Counsel:

This letter opinion addresses two actions related to telecommunications services that homeowners in a community known as The Peninsula were required to purchase through covenants in the community's real estate development documents.  In the first action, filed on August 23, 2013, Plaintiffs REDUS

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 2

Peninsula Millsboro, LLC ("REDUS") and Wells Fargo Bank, N.A. ("Wells Fargo") seek summary judgment to enjoin arbitration demanded by homeowner Defendants Neal M. Mayer, John Gee, Don Dieringer, David Harrod, John Shanaphy, Marc Stanley, Chuck Burrall, and Deb Putt (the "Eight Homeowners").[1] In the second action, Plaintiff James W. Williams, IV ("Williams"), individually and derivatively on behalf of the homeowners' association, The Peninsula Community Association, Inc. (the "PCA"), brings fiduciary duty claims against Defendants REDUS, REDUS Properties, Inc.,[2] and Wells Fargo.[3] REDUS and Wells Fargo have moved for summary judgment in the first action and to dismiss the second action. The Court addresses these motions in turn.

---

[1] C.A. No. 8835-VCN.

[2] According to Williams, REDUS Properties, Inc. is the Wells Fargo subsidiary that controls REDUS. Verified Compl. for Injunctive Relief ("Williams Compl.") ¶¶ 7, 9. The Court acknowledges that REDUS Properties, Inc. is not a party to the first action, but subsumes REDUS Properties, Inc. into the term "Wells Fargo" as relevant to the second action for convenience.

[3] C.A. No. 10228-VCN.

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 3

*****

A. *The Arbitration Action*

The arbitration dispute (the "Arbitration Action") centers on whether the Court or an arbitrator must decide the claims brought by the Eight Homeowners under the Agreement to Obtain Communications Services (the "PCA-PIM Agreement").[4] The critical grounds for the Court's decision, therefore, are the language of that agreement and the claims stated in the Eight Homeowners' complaint in arbitration.[5] Covenants for The Peninsula created a framework under which The Peninsula's original developers established Peninsula Infrastructure

---

[4] Aff. of William Emil Honaker in Supp. of Mot. for Prelim. Inj. ("Honaker Aff.") Ex. B ("PCA-PIM Agreement"). The Court has previously denied REDUS and Wells Fargo's motion to dismiss several counterclaims filed in this action. *See REDUS Peninsula Millsboro, LLC v. Mayer*, 2014 WL 4261988 (Del. Ch. Aug. 29, 2014).
The Eight Homeowners do not concede that the PCA-PIM Agreement is valid. In fact, they argue that if their validity challenges succeed, the arbitration proceedings would become moot. Defs.' Opp'n to Pls.' Mot. for Summ. J. to Enjoin Arbitration ("SJ Opp'n Br.") 2 n.3. Nonetheless, the parties have framed the arbitrability debate for this motion, and that is what the Court addresses.
[5] *See* Honaker Aff. Ex. F ("Arbitration Compl."). The Eight Homeowners filed a complaint and an amended complaint, but the Court's analysis is directed at the amended complaint.

*REDUS Peninsula Millsboro, LLC v. Mayer*
  C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
  C.A. No. 10228-VCN
July 13, 2015
Page 4

Management, LLC ("PIM")[6] and PIM entered into the PCA-PIM Agreement to provide telecommunications services at The Peninsula.[7]  The covenant to pay for such services "runs with the land and [is] secured by a lien on each Owner's Lot or Unit."[8]  The PCA-PIM Agreement provides for arbitration of pricing disputes:

> During the term of this Agreement, the costs of each of the Platform Services shall not exceed an amount equal to the rate charged by the Comparable Provider for similar Platform Services of equal quality as required under this Agreement . . . determined once a year at the time PIM announces the annual rate structure. . . . PIM will not raise or lower its prices more than once during a calendar year and the [PCA] will accordingly adjust the Homeowner assessment.  Any Homeowner may challenge the pricing as violating this Section.  Such Homeowner shall bring an action within six (6) months of the effective date of the new rates in accordance with the dispute resolution process described in Section 8.1 below.  If such action is successful, Homeowners shall be entitled to a rebate or credit (at PIM's election) of the difference between the rate actually charged and the maximum rate allowable under this Section.[9]

---

[6] Honaker Aff. ¶ 12; Answer & Countercl., Countercls. ("Countercl.") ¶ 6; Answer to Countercl. ¶ 6.

[7] *See* Honaker Aff. Ex. A (Declaration of Covenants, Conditions and Restrictions for The Peninsula), Art. XV.

[8] Aff. of Joseph A. Yablonski ("Yablonski Aff.") Ex. E (Memorandum and Notice of Homeowner Requirements for the Peninsula on the Indian River Bay) ¶ 6.  This memorandum was filed with the Sussex County Recorder of Deeds in August 2005.

[9] PCA-PIM Agreement § 5.7.  "Comparable Providers" is defined as "communications service providers that provide residential services in Sussex

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 5

Section 8.1 elaborates that "[w]henever [the PCA-PIM] Agreement requires the use of Dispute Resolution, the [negotiation and arbitration] process contained in this Section shall be used. . . . Unless otherwise stated or modified, all other applicable rules of the [American Arbitration Association (the "AAA")] shall apply."[10]

PIM signed a Bulk Services Agreement (for video and internet services) with Verizon Services Corp. ("Verizon") on May 17, 2005.[11] The Eight Homeowners have been charged $90 per month for services since 2005,[12] while Verizon has charged only $58.95 for the services.[13]

---

County, Delaware and who have similar technical service and performance abilities and who offer reputable levels of customer service as required in this Agreement." *Id.* § 1.1.

[10] *Id.* § 8.1.

[11] Yablonski Aff. ¶ 18 & Ex. F ("Bulk Services Agreement").

[12] The Eight Homeowners state that they have paid the PCA, which paid PIM through June 2012. SJ Opp'n Br. 7. Thereafter, Verizon was instructed to invoice REDUS, instead of PIM. *See* Yablonski Aff. ¶ 16 & Ex. D, at DEV00001053, DEV00001081 (correspondence about billing).

[13] Countercl. ¶¶ 11, 16; Answer to Countercl. ¶¶ 11, 16; *see also* Bulk Services Agreement 16.

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 6

The Eight Homeowners were notified on or around January 1, 2013, "that the price for Platform Services for 2013 would be $90 per month."[14] They (individually and on behalf of the other homeowners) initially filed a Demand for Arbitration with the AAA and sent copies to REDUS, Wells Fargo, and the original developers in late June 2013.[15] The complaint in arbitration asserts a right under the PCA-PIM Agreement "to challenge the prices paid for [telecommunications] services."[16] It requests a return of $31.05 to each homeowner for each month from January 2013 until the date of the arbitration award, as well as a cease and desist order against charging more than the price

---

[14] Honaker Aff. ¶ 23.

[15] *Id.* ¶ 24 & Ex. D, at 10-11 (indicating attempts at service of the initial arbitration complaint).

On May 4, 2012, Wells Fargo and REDUS executed a Foreclosure Bill of Sale and Assignment, which purported to transfer to REDUS "all rights of PIM under the [PCA-PIM] Agreement" and related agreements. *See* Honaker Aff. ¶ 13; *see also* Countercl. Ex. A (Foreclosure Bill of Sale and Assignment). The Eight Homeowners argue, however, that the PCA-PIM Agreement can only be amended by the PCA and PIM, SJ Opp'n Br. 5 (citing PCA-PIM Agreement § 8.11), and that real estate interests could not have changed hands through a UCC foreclosure. *Id.* at 6 n.4. For the present purposes, the Court assumes that REDUS and Wells Fargo have some ownership rights in the PCA-PIM Agreement.

[16] Arbitration Compl. 2; *see also id.* ¶ 23 (noting participation "in Mr. Mayer's overcharge claim").

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 7

Verizon bills.[17]   REDUS and Wells Fargo filed the Arbitration Action on August 23, 2013, primarily asking the Court to enjoin arbitration.   The Eight Homeowners then filed counterclaims essentially seeking rescission of the PCA-PIM Agreement, a return of their excess payments, and an injunction against further excess receipts.

*****

The parties' arguments have narrowed significantly over the course of briefing and oral argument.  The only remaining, developed dispute is whether the Eight Homeowners have presented a comparable pricing dispute for arbitration.  At oral argument, the Eight Homeowners acknowledged that they seek the Court's decision on arbitrability of their claims.[18]  The Eight Homeowners also did not mention further discovery.[19]   As such, REDUS and Wells Fargo's relevant contentions are that the Eight Homeowners' claims are not arbitrable because the

---

[17] *Id.* at 10.

[18] Oral Arg. Pls.' Mot. for Summ. J. and to Enjoin Arbitration in C.A. #8835-VCN Defs.' Mot. to Dismiss in C.A. #10228-VCN ("Oral Arg. Tr.") 16-17.

[19] In their opposition brief, the Eight Homeowners had argued that they needed more time to take discovery "before the March 3, 2015 discovery cutoff date in the Second Amended Scheduling Order."  SJ Opp'n Br. 1, 19-23.

*REDUS Peninsula Millsboro, LLC v. Mayer*
  C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
  C.A. No. 10228-VCN
July 13, 2015
Page 8

applicable arbitration provision covers only comparable pricing disputes, and a claim to recover gross profits does not fall within those bounds. They emphasize that the Eight Homeowners have failed to allege that the $90 price is not comparable with other retail (as opposed to wholesale) prices. The Eight Homeowners respond that they state a pricing dispute because the "costs" charged to them exceed the price charged by Verizon, a comparable provider[20]—a comparable pricing dispute by the plain language of the PCA-PIM Agreement.[21]

*****

The Court grants summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[22]

---

[20] It is not disputed that Verizon is a comparable provider. Oral Arg. Tr. 6, 22.

[21] In addition to advancing their interpretation of the PCA-PIM Agreement's plain language, the Eight Homeowners contend that ambiguity should be interpreted in their favor because REDUS and Wells Fargo are successors to the drafter. SJ Opp'n Br. 18-19.

[22] Ct. Ch. R. 56(c).

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 9

*****

The Eight Homeowners argue that REDUS and Wells Fargo (ultimately) are charging them more than Verizon charges, violating Section 5.7, with the terms "prices" and "costs" used interchangeably. REDUS and Wells Fargo highlight their business judgment, disclosure, and a difference in position to explain why the Eight Homeowners do not raise a comparable pricing dispute.[23] To determine whether a claim is arbitrable, the Court looks at (1) whether the parties' agreement to arbitrate is broad or narrow, and (2) whether the claim fits within the scope of

---

[23] They argue that a proper challenge aims to ensure that "the retail price . . . paid by Homeowners within The Peninsula does not exceed the retail price at which comparable services are available to similarly situated consumers outside The Peninsula." Pls.' Reply Br. in Supp. of Their Mot. for Summ. J. to Enjoin Arbitration ("SJ Reply Br.") 10.

REDUS and Wells Fargo cite *Marshall v. Priceline.com Inc.* ("*Priceline I*"), in which the Superior Court dismissed claims that Priceline charged service fees that "had no rational relationship to the costs incurred" because those fees were within Priceline's business judgment, not limited by contract, and had been disclosed to consumers. 2006 WL 3175318, at *4 (Del. Super. Oct. 31, 2006). Priceline's situation may be distinguishable, however, because the Eight Homeowners were required to accept charges as part of their property ownership and were told that the fee arrangement was a "pass through." *Cf., e.g.*, *Marshall v. Priceline.com Inc.* ("*Priceline II*"), 2010 WL 1068197, at *6 (Del. Super. Mar. 8, 2010) ("Reasonable users of this service would appreciate that Priceline is in the business of profiting from these transactions . . . ."), *aff'd*, 7 A.3d 485 (Del. 2010) (TABLE).

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 10

the agreement.[24]  "If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to a right in the contract."[25] The question here is whether the Eight Homeowners' claims relate directly to the narrow right to arbitrate a comparable pricing dispute.[26]  When interpreting a contract, the Court seeks to determine the parties' intent from the plain language of their agreement.[27]  The contract is viewed as a whole and "so as not to render any part of the contract mere surplusage."[28]  "Summary judgment is appropriate only if the contract . . . is unambiguous."[29]

The plain language of Section 5.7 of the PCA-PIM Agreement allows a homeowner to challenge a rate within six months of implementation through arbitration.  Section 5.7 states that "the costs of each of the Platform Services shall not exceed an amount equal to the rate charged by the Comparable Provider for

---

[24] *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002).
[25] *Id.*
[26] Section 8.1 applies when the PCA-PIM Agreement calls for "Dispute Resolution," and the Eight Homeowners only purport to arbitrate under Section 5.7.
[27] *E.g.*, *Rossi v. Ricks*, 2008 WL 3021033, at *2 (Del. Ch. Aug. 1, 2008).
[28] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).
[29] *Rossi*, 2008 WL 3021033, at *2.

*REDUS Peninsula Millsboro, LLC v. Mayer*
  C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
  C.A. No. 10228-VCN
July 13, 2015
Page 11

similar Platform Services of equal quality."[30]  The Court sees no apparent

distinction between the use of "prices" and "costs" in this Section, and they are not

defined terms in the overall agreement.  There is no language about retail and

wholesale, and REDUS and Wells Fargo at most offer a facially reasonable

contract interpretation that goes to the merits of the claim.[31]  The Eight

Homeowners' arbitration claims directly relate to the rights in Section 5.7 (and

Section 8.1) and state a comparable pricing claim.  Which inputs to compare would

be a decision for the arbitrator.  Thus, the motion for summary judgment is denied

---

[30] PCA-PIM Agreement § 5.7.

[31] The retail-wholesale distinction could be significant because the PCA-PIM Agreement technically obligates PIM to acquire services for the PCA (as opposed to the individual homeowners) but allows an individual homeowner to bring a comparable price dispute.  *See* Oral Arg. Tr. 22-23.  REDUS and Wells Fargo emphasize that PIM was able to negotiate for a lower wholesale rate because of the volume of its business and the access to infrastructure it could offer Verizon. SJ Reply Br. 9-10 (citing *Priceline II*, 2010 WL 1068197, at *6 ("[T]he fact that Priceline as a business entity is able to obtain a greater discount for a room . . . due to the volume of business it generates and the advantages it can offer hotels by selling surplus capacity does not obligate it to disclose the transactional profit it will make . . . .")).

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 12

(except to the extent that the parties have agreed that the Court should determine substantive arbitrability).[32]

B. *The Fiduciary Duty Action*

Williams, apart from the Eight Homeowners, but on his own and on behalf of the PCA, asserts fiduciary duty claims against REDUS and Wells Fargo for collecting the $90 telecommunications fee after they gained control over The Peninsula and the PCA through "a May 12, 2014 foreclosure on liens which Wells Fargo had on the record owner of the property at the Peninsula."[33]  A somewhat broader recital of facts is necessary to gain context for Williams's complaint, although it arises from largely the same events as the Arbitration Action.

---

[32] At oral argument, REDUS and Wells Fargo argued that Wells Fargo is not subject to arbitration.  Oral Arg. Tr. 22.  This was not an argument emphasized in the papers.  The Eight Homeowners originally brought arbitration claims against both Wells Fargo and REDUS.  REDUS and Wells Fargo, because of Wells Fargo's control of REDUS, share common interests.  It, of course, may be that only REDUS would be bound by the outcome of the arbitration, but the Court does not make that conclusion yet.

[33] Williams Compl. ¶ 3.

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 13

Williams purchased property and became a member of the PCA in January 2007.[34]    As such, he became bound by the covenants to pay for telecommunications services.  The original developers of The Peninsula created the PCA and PIM.  When the PCA and PIM executed the PCA-PIM Agreement, the original developers controlled both entities.  Under the PCA-PIM Agreement, PIM "is to serve as the agent for the [PCA] to arrange for the provision of telecommunication[s] services for a term of 25 years, to be renewed automatically for four successive ten (10) year periods" absent notice by PIM.[35]  PIM engaged Verizon to provide these services on May 17, 2005, through the Bulk Services and Marketing Agreements.

From 2005 to the present, homeowners in The Peninsula have paid $90 per month for these services.  Plaintiffs had been "repeatedly told . . . that the $90 per month payment was a 'pass through'" to Verizon.[36]  In reality, Verizon had only billed $58.95 per month for those services.  Neither PIM nor REDUS nor Wells Fargo has provided services to account for the $31.05 differential.  Rather, Verizon

---

[34] The facts have been drawn from Williams's complaint.
[35] *Id.* ¶ 15 (emphasis omitted).
[36] *Id.* ¶ 19.

*REDUS Peninsula Millsboro, LLC v. Mayer*
  C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
  C.A. No. 10228-VCN
July 13, 2015
Page 14

has provided the services and PCA employees have handled administrative tasks, such as collecting payments. Williams, the other homeowners, the PCA's administrative employees, and Wells Fargo did not know about the price disparity until 2012.

At Wells Fargo's request, the Court appointed a receiver for The Peninsula in October 2009. On May 4, 2012, Wells Fargo conducted a UCC lien foreclosure sale in which it sold itself "rights" in the PCA-PIM Agreement (and its payment arrangement) and then transferred those rights to REDUS.[37] Wells Fargo foreclosed on its lien on The Peninsula's real estate in September 2013, and the sale was confirmed on May 12, 2014. Wells Fargo assigned that interest to REDUS as well. Wells Fargo and REDUS then placed (or kept) three allegedly conflicted directors on the four-member PCA board: PCA President Wade Adler ("Adler"), Sarah Wicker ("Wicker"), and H.B. "Chuck" Munn, Jr. ("Munn"). Adler and Munn were employed by the firm that REDUS and Wells Fargo engaged to manage The Peninsula. It is therefore alleged that each kept his job and board

---

[37] *Id.* ¶ 23. There is debate over whether proper notice was given, but it is immaterial to the Court's decision.

*REDUS Peninsula Millsboro, LLC v. Mayer*
  C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
  C.A. No. 10228-VCN
July 13, 2015
Page 15

seat at REDUS and Wells Fargo's behest. Wicker was an employee of REDUS and Wells Fargo.

Since May 2014, REDUS and Wells Fargo have done nothing to change the fee. Instead, they "have entered into a tentative agreement to sell [The Peninsula's real estate] to a third-party developer, and . . . have carved out the PCA-PIM Agreement."[38] Williams filed his complaint on October 13, 2014.[39] The complaint asserts that REDUS and Wells Fargo violated fiduciary duties to Williams and the PCA by "allowing [the PCA-PIM Agreement], through direct and indirect action, to continue to be imposed upon the [PCA] and its members."[40] REDUS and Wells Fargo are said to have owed fiduciary duties because of REDUS' "control of the [PCA]" (and Wells Fargo's control over REDUS).[41]

---

[38] *Id.* ¶ 34 (emphasis omitted). This agreement has since been finalized, although its details have not been presented to the Court. *See infra* text accompanying note 57.

[39] The scheduling deadline in the Arbitration Action for amending the complaint or adding parties was May 9, 2014.

[40] Williams Compl. ¶ 68.

[41] *Id.* ¶ 62.

*REDUS Peninsula Millsboro, LLC v. Mayer*
  C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
  C.A. No. 10228-VCN
July 13, 2015
Page 16

*****

The points of contention for Williams's direct and derivative[42] fiduciary duty claims also have shifted throughout the briefing and argument. REDUS and Wells Fargo's argument for dismissal initially focused on a lack of standing to challenge the underlying wrongs but evolved into an argument that there is no liability for continued consequences of conduct that occurred in 2004 and 2005.[43] REDUS and

---

[42] There has been no serious challenge to Williams's demand futility assertions. At oral argument, REDUS and Wells Fargo suggested that they will provide evidence to show that they had not placed anyone on the board. Oral Arg. Tr. 43-44. That argument comes too late for consideration on this motion.

[43] The Court will consider the latter argument sufficiently timely. REDUS and Wells Fargo acknowledged the irrelevance of successor liability arguments during oral argument. *See id.* at 25.

In their reply brief, REDUS and Wells Fargo argued that they did not owe fiduciary duties to the PCA and its members. They also contended that Williams had not alleged an unfair price (as opposed to an unfair profit). They did not focus on these arguments in oral argument.

Fiduciary duties are not limited to those that run from a corporate board to a shareholder. At least for the purposes of the motion to dismiss, the Court accepts the possibility that the PCA's directors and controller(s) owed fiduciary duties to the PCA and its members with respect to the telecommunications services arrangement. *See, e.g.*, Restatement (Third) of Property (Servitudes) § 6.20 & cmt. a (2000) (listing duties of developers in control of community associations and explaining that "[i]nstead of broadly characterizing the developer as a fiduciary, the rules stated in this section identify areas where protection of the members is particularly needed and can be afforded without unduly limiting the developer's

*REDUS Peninsula Millsboro, LLC v. Mayer*
    C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
    C.A. No. 10228-VCN
July 13, 2015
Page 17

Wells Fargo conceded at oral argument that their focus is on dismissal pursuant to Court of Chancery Rule 12(b)(6) instead of Rule 23.1.[44]  Their second primary argument is that Williams needed to join the Arbitration Action and cannot avoid the associated deadlines without a showing of "excusable neglect."[45]  Williams's responses focus on the acts (or deliberate inaction) that occurred after REDUS and Wells Fargo assumed control over the PCA and had rights to the PCA-PIM Agreement.  These actions are said to warrant entire fairness review and Williams's requested remedies.

*****

The Court grants a motion to dismiss if, after "accept[ing] all well-pleaded factual allegations . . . as true, accept[ing] even vague allegations . . . as 'well-pleaded' if they provide . . . notice of the claim, [and] draw[ing] all reasonable inferences in favor of the plaintiff, . . . the plaintiff could not recover under any

---

flexibility, or ability to realize a profit on its investment").  Additionally, the pleading that $90 was charged for services billed at $58.95 provides sufficient notice of an unfair price claim.

[44] Oral Arg. Tr. 44.

[45] Defs.' Opening Br. in Supp. of Mot. to Dismiss ("MTD Opening Br.") 13-14 (citing cases and Ct. Ch. R. 6(b)).

*REDUS Peninsula Millsboro, LLC v. Mayer*
 C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
 C.A. No. 10228-VCN
July 13, 2015
Page 18

reasonably conceivable set of circumstances susceptible of proof."[46] As a general matter under Rule 23.1, a plaintiff shareholder or member who seeks "to enforce a right of a corporation or of an unincorporated association" must "allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains."[47] Under this formulation, Williams would not have standing for a challenge to the agreements crafted in 2005, before he became a member of the PCA. That does not necessarily preclude a derivative action either because of the continuing nature of the wrong and the unusual circumstances of this case or because of the much more recent conduct of REDUS and Wells Fargo.[48]

---

[46] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[47] Ct. Ch. R. 23.1(a). Additionally, at this stage, the Court assumes that an injury to the members of the PCA is an injury to the PCA.

[48] In addition, Williams seeks to assert his direct claims based on the requirement that he pay the $90 per month fee. His standing to assert an individual claim, if he has an individual claim, is not contested.

*REDUS Peninsula Millsboro, LLC v. Mayer*
  C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
  C.A. No. 10228-VCN
July 13, 2015
Page 19

*****

Again, the parties join argument over the issues of (1) whether Williams can state a fiduciary duty claim based on a contractual payment system set years before his chosen timeframe and (2) whether Williams needed to have participated in the Arbitration Action. First, REDUS and Wells Fargo emphasize that they cannot be liable for merely maintaining a system that existed before they gained control over the PCA. They cite several cases finding that a plaintiff cannot recover for wrongs that occurred before she became a shareholder, despite later flowing consequences.[49] Ownership for standing purposes is measured at the time "when the specific acts of alleged wrongdoing occur, and not when their effect is felt."[50] Policy concerns about buying causes of action and interfering with what a plaintiff fairly expected when acquiring her shares are prevalent.[51] REDUS and Wells

---

[49] *See* MTD Opening Br. 8-9.

[50] *Schreiber v. Bryan*, 396 A.2d 512, 516 (Del. Ch. 1978).

[51] *See, e.g.*, *Brown v. Automated Mktg. Sys., Inc.*, 1982 WL 8782, at *1-2 (Del. Ch. Mar. 22, 1982) ("The policy embodied in this section [327] is the prevention of the evil of purchasing stock in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of the stock."). There is also a concern about upsetting other expectations and obligations. *See Elster v. Am. Airlines*, 100 A.2d 219, 224 (Del. Ch. 1953) ("[I]t does not follow that [the

*REDUS Peninsula Millsboro, LLC v. Mayer*
    C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
    C.A. No. 10228-VCN
July 13, 2015
Page 20

Fargo, however, do not provide authority for specifically analyzing the Rule 12(b)(6) aspect of the asserted duty to undo a system that underlies later contested conduct.

Approaching the allegations from a Rule 12(b)(6) standpoint, the Court has not been persuaded that one can never state a fiduciary duty claim for continuing an arrangement, particularly when a fiduciary benefits from an agreement with allegedly unconscionable aspects. According to the Restatement (Third) of Property (Servitudes), a developer in control of a community association owes a fiduciary duty "to comply with and enforce the terms of . . . governing documents," among others.[52] A reasonably conceivable breach of fiduciary duty exists if (as must be accepted at this stage) homeowners informed Wicker of the possible violation of the PCA-PIM Agreement and REDUS and Wells Fargo

individual defendants] committed any wrong in carrying out the contract once it had been made. Indeed, had they not done so, the Corporation would presumably have been subject to liability for breach of contract." (internal quotation marks omitted)), *disapproved of on other grounds by Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004).

[52] Restatement (Third) of Property (Servitudes) § 6.20(5) (2000). The PCA-PIM Agreement arguably is not a "governing document," but a full merits analysis is not necessary at this time.

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 21

affirmatively "'instigat[ed] . . . and defend[ed]'" the self-serving arrangement, including by attempting to carve out the PCA-PIM Agreement benefits while selling The Peninsula.[53]

The cases cited on the standing issue do not rule out the ability to challenge "any breach of duty that occurs while [plaintiffs] are shareholders."[54] Furthermore, the typical policy concerns do not color this action: Williams and other homeowners had not known about the price differential until long after they had purchased their property, and a breach of contract claim for decreasing the price is not a concern. The parties profiting from the PCA-PIM Agreement were fiduciaries, those directly injured were required to become members of the PCA

[53] Answering Br. of Pl. James W. Williams, IV in Opp'n to Mot. to Dismiss 29 (quoting Williams Compl. ¶ 70).
[54] *See Thorpe v. CERBCO, Inc.*, 1993 WL 35967, 18 Del. J. Corp. L. 1196, at 1200 (Del. Ch. Jan. 26, 1993); *see also Brown*, 1982 WL 8782, at *1 ("[I]t is not the merger itself that constitutes the wrongful act of which plaintiff complains, but rather it is the fixing of the terms of the transaction which will be finalized by the consummation of the merger which provides the foundation for the suit."); *Schreiber*, 396 A.2d at 517 ("The 1972 amendments which plaintiff relies upon served only to reconfirm the earlier agreement . . . without creating a new agreement upon which a cause of action could be based."); *Elster*, 100 A.2d at 224 (implying the possibility of a waste challenge, noting that "[t]he wrong or injury of which plaintiff complains is the granting of the options, not the exercise thereof").

*REDUS Peninsula Millsboro, LLC v. Mayer*
  C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
  C.A. No. 10228-VCN
July 13, 2015
Page 22

and to pay for services by virtue of property ownership—not by meaningful choice. There was a difference in bargaining power, the PCA-PIM Agreement was adopted with a prospective term of 65 years, and the homeowners were led to believe that their payments were all going to the service provider. There might be some conceptual difficulties, and the fiduciary duty claims might not ultimately succeed. However, it is at least reasonably conceivable that a fiduciary cannot take advantage of a preexisting agreement under these unusual circumstances.

Second, REDUS and Wells Fargo contend that Williams needed to have joined the Arbitration Action and cannot now maintain his complaint. Rule 6(b) addresses the situation when a movant seeks to extend a deadline that has been set through agreement of the parties or Court order. Once the prescribed period has passed, "the Court for good cause shown may, at any time in its discretion . . . permit the act to be done where the failure to act was the result of excusable neglect."[55] Applying Rule 6(b) here rests on the assumption that Williams needed to have participated in the Arbitration Action. At oral argument, REDUS and Wells Fargo offered a sympathetic hypothetical that each homeowner in The

---

[55] Ct. Ch. R. 6(b)(2).

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 23

Peninsula could hail them to court in individual proceedings. Regardless, that is not the situation the Court has on hand. REDUS and Wells Fargo filed the Arbitration Action to stop the Eight Homeowners, named as individuals, from pursuing arbitration.[56] Williams was not bound by that action, and he now presents a direct and derivative action. There is no support for the argument that Williams schemed to avoid deadlines, even if he retained the same attorney and complains about the same underlying telecommunications arrangement. Furthermore, he challenges events subsequent to the amendment deadline. Thus, this argument for dismissal fails.

One last point bears mention. At oral argument, REDUS and Wells Fargo confirmed that REDUS has completed the sale of The Peninsula to another developer, although it maintains ownership of the telecommunications rights.[57] In other words, the period of time when REDUS and Wells Fargo stood on both sides of the PCA-PIM Agreement (Williams's basis for his fiduciary duty claims) was at

---

[56] Admittedly, the arbitration complaint was filed "on behalf of all Peninsula homeowners." Arbitration Compl. ¶ 23. REDUS and Wells Fargo's complaint also asks to enjoin others from joining the arbitration efforts and the Eight Homeowners from acting on behalf of others.

[57] Oral Arg. Tr. 27-28.

*REDUS Peninsula Millsboro, LLC v. Mayer*
   C.A. No. 8835-VCN
*Williams v. REDUS Peninsula Millsboro, LLC*
   C.A. No. 10228-VCN
July 13, 2015
Page 24

most approximately nine months.  The parties have not framed a debate over which remedies are still viable in this action in light of the change in ownership, but it appears that certain remedies are no longer available due to the change in control of the PCA.[58]  The motion to dismiss the fiduciary duty claims is otherwise denied.

*****

For the reasons and to the extent stated above, the Court denies the motion for summary judgment and the motion to dismiss.  Counsel are requested to confer and to submit implementing forms of order.

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:    Register in Chancery-K

---

[58] *See id.* at 35 ("[The case] attacks a time frame that . . . [is] only about nine months . . . .").